UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERT BEARDSLEY, JR.,**

        **Plaintiff,**        CIVIL ACTION NO. 12-cv-11167

  vs.

                              DISTRICT JUDGE STEPHEN J. MURPHY, III

**COMMISSIONER OF**        MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

        **Defendant.**
_____/

### REPORT AND RECOMMENDATION

        Plaintiff Robert Beardsley seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Remand Pursuant to Sentence Four (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 16).  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

### I.    RECOMMENDATION:

        This Court recommends that Plaintiff's Motion for Remand (docket no. 11) be GRANTED and that Defendant's Motion for Summary Judgment (docket no. 15) be DENIED.

## II. PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of June 10, 2008, alleging that he had been disabled since May 15, 2007, due to manic depression and bipolar disorder. (TR 147-50, 204.) The Social Security Administration denied benefits. (TR 56, 60.) Plaintiff requested a *de novo* hearing, which was held via video conference on November 22, 2010, before Administrative Law Judge (ALJ) Sherry Thompson, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing his past relevant work as a machine operator. (TR 11-20.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. Plaintiff filed his Motion for Remand and Defendant filed his Motion for Summary Judgment.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY[1]

### A. Plaintiff's Testimony

Plaintiff was 50 years old at the time of the administrative hearing and 46 years old at the time of alleged onset. (TR 29, 152.) Plaintiff has past work experience as a maintenance staff person, a heat treater, a machine operator, and a truss builder. (TR 205.) Plaintiff testified that he hasn't worked since May 2007 when he was laid off due to a lack of work. (TR 30.) At the time of the hearing, Plaintiff had no source of income. (TR 30.) He has a high-school diploma. (TR 30.) Plaintiff testified that he is not married, but he lives with his girlfriend and her son. (TR 29, 34.) Plaintiff testified that he does not currently have a driver's license, he does not help with household

---

[1] Plaintiff's Motion only raises issues with the ALJ's decision regarding Plaintiff's mental impairments. (*See* docket no. 11.) Therefore, the Court's recitation of the record in this matter is similarly limited.

chores, and he does not assist with grocery shopping. (TR 30, 34.)

Plaintiff testified that he has depression and bipolar disorder. (TR 30-32.) In general, he gets aggravated over little things, his thoughts race day and night, he cannot sleep, he doesn't associate with people, and he has no friends. (TR 31-32.) Plaintiff testified that he did not get along with co-workers and supervisors because he would "have spouting attacks" whenever he disagreed with them. (TR 32, 33.) Plaintiff also testified that he cannot follow instructions well and that he cannot focus. (TR 32.) Plaintiff also testified that he has a history of drinking (about four to five beers a day) and smoking marijuana (about once a week). (TR 33.) At the time of the hearing, Plaintiff took Risperdal and Lexapro for his mental disorders; he also saw Dr. Anne Tadeo, his treating physician, ever three months and Katy Kidd, his therapist, every two weeks. (TR 31-32.) Plaintiff stated that his medications help somewhat, but they do not relieve his racing thoughts. (TR 35, 41.)

Plaintiff testified that on a typical day, he gets up, drinks coffee, and watches the news. (TR 34.) He then takes a shower and has a snack while he watches more television. (TR 34.) Plaintiff testified that "by then, it's probably around dinnertime," at which time he watches the 6 o'clock news, eats dinner, watches more television, and then goes to bed. (TR 34.) Plaintiff testified that he doesn't understand the news stories that he watches, but he sometimes disagrees with the verdict when he watches court shows. (TR 34-35.) Plaintiff indicated that he watches five to six hours of television each day, but it is broken up into increments of less than an hour because he cannot focus for longer than a few minutes. (TR 38-39.) Plaintiff testified that he does not try to read books or magazines because he cannot focus on them. (TR 42.)

Plaintiff's girlfriend also testified at his hearing. (TR 43-46.) She indicated that Plaintiff

is complaint with his medications and that they have lived together for two years. (TR 43, 44.) She confirmed that Plaintiff "gets agitated by just little things that normally you or I wouldn't," and that she tries to calm him down. (TR 44.) She testified that they rarely go to stores for more than a few minutes because Plaintiff gets "antsy and anxious" because he is uncomfortable around people. (TR 44.) She also testified that she has not known him to drink or smoke since they have been living together. (TR 44-45.)

   **B.     Medical Record**

Plaintiff's first record of psychiatric treatment appears to be an April 2008 assessment at Michigan Psychiatric and Behavioral Associates. (TR 123.) Plaintiff was described as being of average intelligence with a cooperative mood. (TR 126.) He was noted as having a blunted affect and depressed state, but there was no indication of delusion, hallucination, or other thought problems. (TR 126.) He was diagnosed with depressive disorder. (TR 129.)

Two months later, in June 2008, Plaintiff presented to Dr. Tadeo, who performed a psychiatric evaluation. (TR 130.) Dr. Tadeo noted that Plaintiff had been taking psychotropic medications, but he was drinking a six pack of beer every day and smoking marijuana once a week. (TR 130.) Plaintiff was described as pleasant and cooperative; he had a goal-directed thought process and had labile mood. (TR 131.) Dr. Tadeo indicated that Plaintiff had fair to poor focus, concentration and memory and that he had fleeting suicidal ideation. (TR 131.) Dr. Tadeo diagnosed him with type I bipolar disorder and a personality disorder not otherwise specified with antisocial traits. (TR 131.)

In August 2008, a state-agency reviewing psychologist, Dr. Wayne Hill, reviewed Plaintiff's then-existing medical evidence and issued his assessment. (TR 323-325.) Dr. Hill found that

4

Plaintiff was not significantly limited or moderately limited in all but two categories of his assessment; he found that there was "no evidence of limitation" in Plaintiff's ability to "accept instructions and respond appropriately to criticism from supervisors," or to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (TR 323-24.) With regard to Plaintiff's RFC, Dr. Hill opined as follows:

> Claimant's understanding and memory are moderately limited. Claimant's capacity for sustained concentration and persistence is moderately limited. Social interactions are moderately limited due to features of a personality disorder. Claimant's ability to adapt is moderately limited due to features of a personalty disorder in particular, antisocial traits. Claimant retains the mental residual capacity to perform step one and step two tasks on a sustained basis.

(TR 325.)

In April 2009, Plaintiff told his therapist that he was able to perform all of his household tasks and activities of daily living. (TR 444.) He also continued to report problems with depression, racing thoughts, and an inability to sleep. (TR 439, 440.) He reported that "he can get along well with others 'if he wants to.'" (TR 441.) He also indicated that he was still having a "difficult time focusing and concentrating" and that he had "daily mood swings." (TR 445.) He was diagnosed with bipolar disorder I and personality disorder with anti-social traits. (TR 445-46.)

In June 2009, Dr. Tadeo completed an assessment for Plaintiff. (TR 408-09.) Dr. Tadeo opined that Plaintiff "is unable to return to work on a permanent basis" because of bipolar disorder with frequent mood swings, emotional disregulation, and antisocial personality disorder. (TR 408.) She noted that Plaintiff has "significant loss of psychological, personal and social adjustment (severe limitations)" characterized by mood swings, depressive symptoms with fleeting suicidal ideation, and intermittent auditory and visual hallucinations. (TR 409.) Dr. Tadeo remarked that Plaintiff had "a chronic condition with frequent releases and recurrences." (TR 409.)

In August 2009, Dr. Tadeo noted that Plaintiff continued to have mood swings and anger outbursts; he reported that he was not getting good quality sleep; and he denied any depressive episodes, suicidal ideation, or hallucinations or delusions. (TR 136.)

From July 2010 through October 2010, Plaintiff attended what appear to be weekly therapy sessions at M.P.A. Group. (TR 410-22.) The notes from these therapy sessions indicate that Plaintiff's medication helped to stabilize his mood, but he still had outbursts of anger over "small frustrations." (TR 410-22.)

### C. The Vocational Expert

The ALJ asked the VE to consider an individual who (1) was of the same age, education, and past work experience as Plaintiff; (2) had the residual functional capacity to perform work at the medium level; (3) should avoid concentrated exposure to dust, fumes, odors, and poor ventilation; (4) was capable of understanding, remembering, and carrying out one- and two-step tasks; (5) could perform jobs of minimum concentration; (6) would work best in small groups or alone with only brief, superficial contact with others; and (7) could adapt to routine changes in the work environment. (TR 48.) The VE testified that this individual could perform Plaintiff's past work as a machine operator. (TR 48-49.) The VE also testified that this person could work as an assembler or a packager and that several jobs also existed for such an individual if he were limited to light work. (TR 49.)

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through September 30, 2011; had not engaged in substantial gainful activity since May 15, 2007; and suffered from severe chronic obstructive pulmonary disease (COPD), a Type 1 bipolar disorder, a personality disorder not otherwise specified with antisocial traits, and a polysubstance abuse disorder currently in remission; he did not have an impairment or combination of impairments that

6

met or equaled the Listing of Impairments. (TR 13-14.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible, and she afforded "little weight" to Dr. Tadeo's opinion and "great weight" to Dr. Hill's opinion. (TR 19.) The ALJ then found that Plaintiff could perform his past work as a machine operator. (TR 20.) Therefore, he was not suffering from a disability under the Social Security Act at any time from May 15, 2007, through the date of the ALJ's decision. (TR 20.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

*Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff's singular argument is that the ALJ failed to properly evaluate or weigh the medical opinions of record and, therefore, the ALJ's RFC was deficient. (Docket no. 11; *see also* docket no. 17 at 1.) Specifically, Plaintiff asserts that the ALJ failed to show good reason for assigning "little weight" to the opinions of Plaintiff's treating physician while assigning "great weight" to the opinions of the state's nonexamining consultant. (Docket no. 11 at 3-8.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source

offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, support ability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

The ALJ's full discussion of the opinions in question is as follows:

> As for the opinion evidence, the claimant's treating physician, Ann M. Tadeo, M.D., opined that the claimant would be unable to return to work on a permanent basis. I find the severity of Dr. Tadeo's opinion unsupported by the whole of the record. I note that she lacks the treatment records to substantiate such an opinion. In fact, although her records diagnosed the claimant with a bipolar and personality disorder, the records appear to be internally inconsistent; for example, while concluding the claimant was mentally impaired, she noted he denied any depressive episodes and that he was pleasant and cooperative. Based upon the foregoing, I afford the opinion of Dr. Tadeo little weight when assessing the claimant's residual functional capacity.
>
> Further opinions were submitted regarding the claimant's abilities. The State agency psychological consultant's mental assessment, which found the claimant's understanding and memory, capacity for sustained concentration and persistence, and social interactions moderately limited, and that the claimant retained the mental capacity to perform work comprised of step one and step two tasks on a sustained basis, is given great weight because it remains consistent with the whole of the objective medical evidence.

(TR 19.)

Defendant first argues that the ALJ was not required to accept Dr. Tadeo's opinion, that Plaintiff was unable to return to work on a permanent basis, because the issue of disability is ultimately reserved to the Commissioner. (Docket no. 16 at 13 (citing 20 C.R.F. §§ 404.1527(e)(1); 416.927(e)(1).) In this regard, Defendant is correct, but as Plaintiff notes, the ALJ did not address why he rejected the remainder of Dr. Tadeo's opinions. (Docket no. 17 at 5.) For example, in the same assessment, Dr. Tadeo opined that Plaintiff had "significant loss of psychological, personal and social adjustment (severe limitations)" characterized by mood swings, depressive symptoms with fleeting suicidal ideation, and intermittent auditory and visual hallucinations. (TR 409.)

Defendant also asserts that the ALJ found that Dr. Tadeo's opinion was "not supported by the record as a whole and, in particular, that there was a dearth of treatment notes from this physician," that Dr. Tadeo "did not set forth any actual limitations with regard to Plaintiff's mental function in her progress notes," and that "other evidence in the record fails to support Dr. Tadeo's extreme conclusion." (Docket no. 16 at 13-15.) As Plaintiff suggests, however, Defendant's

arguments engage in a post-hoc review of the evidence to support the ALJ's general conclusion. At most, the ALJ referred to one record (without citation) indicating that Dr. Tadeo's opinions are not credible because "she noted [that Plaintiff] denied any depressive episodes and that he was pleasant and cooperative" during one session. (TR 19.) As Plaintiff indicates, though, bipolar disorder is marked by mood swings, and as Dr. Tadeo indicated, Plaintiff had "a chronic condition with frequent releases and recurrences."

The Court finds that the ALJ failed to provide good reason for her decision to afford "little weight" to Dr. Tadeo's opinion. Moreover, a plain reading of the ALJ's decision implies that she did not consider any of Dr. Tadeo's opinions with the exception of Dr. Tadeo's ultimate disability-related conclusion. To that extent, the ALJ appears to have entirely rejected Dr. Tadeo's opinion. Likewise, while the ALJ was entitled to afford greater weight to Dr. Hill's opinion, she provided no basis for her decision other than to say that "it remains consistent with the whole of the objective medical evidence." Such a general statement is insufficient to support the ALJ's decision as it is not sufficiently specific to explain the reasoning behind the decision. Therefore, the Court recommends remanding this matter for a full discussion of the ALJ's reasoning for assigning "little weight" to Dr. Tadeo's opinions and "great weight" to Dr. Hill's opinions. While such an order may ultimately be an exercise in formality, such a discussion is necessary for the Court to engage in meaningful appellate review.

## VI.   CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Remand (docket no. 11) should be GRANTED and this matter should be remanded for a discussion regarding the ALJ's reason for granting "little weight" to the opinions of the state's nonexamining consultant; thus, Defendant's Motion for Summary Judgment (docket no. 16) should be DENIED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 19, 2013        s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 19, 2013   s/ Lisa C. Bartlett
                           Case Manager